ELMER JACKSON, Plaintiff, v. FRANK IMBURGIA, Doing Business under the Name of EAST MAIN HOTEL, et al., Defendants.

JAMES A. JACKSON, Plaintiff, *v.* FRANK IMBURGIA, Doing Business under the Name of EAST MAIN HOTEL, et al., Defendants.

Supreme Court, Special Term, Monroe County, May 7, 1945.

1064

*Abraham G. Francis* for plaintiffs.

*Joseph Kaufman,* for Frank Imburgia and others, defendants.

VAN VOORHIS, J. Frank Imburgia, owner and proprietor of the hotel, has been named defendant in both actions. The defendant bartenders who, it is claimed, refused to wait upon the respective plaintiffs, were Harry Koveleski and Hallie Brummett. Both actions are to recover penalties under article 4 of the Civil Rights Law for alleged racial discrimination in refusing to serve plaintiffs, who are Negroes, with drinks at a hotel bar.

The plaintiffs seek to examine defendants and also one Sam Imburgia, manager of the hotel, concerning whatever directions or authority may have been given to the bartenders with reference to service at this bar to members of the Negro race.

The basis for liability asserted against the owner of the hotel is somewhat different from that against the bartenders. Section 40 of the Civil Rights Law subjects both owners and employees of such establishments to penalties if they have " directly or indirectly " denied any of the accommodations of the hostelry on account of color. Plaintiffs charge the bar-

tenders with having been the active agents in refusing them admittance. Recovery of a penalty is sought against the owner, who was not personally present, on the theory that the bartenders acted under his directions or authority.

Under the ruling in *Hubert* v. *Jose* (148 App. Div. 718),* the owner of a restaurant is liable for the statutory penalty although he did not personally refuse to serve the plaintiff if the refusal was made by a waiter in his employ and engaged in the defendant's business at the time in the absence of an express prohibition by the owner of such discrimination. The court said (pp. 720–721): " The second point made is that there was no proof of any personal refusal by the defendant. But there is no dispute that the defendant was the proprietor of the place, that the refusal was made by the defendant's servant who was a waiter in his employ about the defendant's business at the time, and who came forward to the plaintiff. In view of the satisfactory discussion of this point by Municipal Court Judge FREIFELD, I need not discuss it at length. The principle is well expressed in *George* v. *Gobey* (128 Mass. 289). (See, too, Mechem Agency, § 745, and cases cited.) If the waiter was acting contrary to the defendant's orders, without his knowledge or consent, not merely in a colorable way, then the defendant would be entitled to show such disobedience as relevant upon the authority of the servant to refuse the entertainment. (*Westchester County* v. *Dressner*, 23 App. Div. 215, citing *Town of Kirkwood* v. *Autenreith*, 21 Mo. App. 73.) "

Unquestionably if the defendant Frank Imburgia, owner of this hotel, had in good faith given directions to the bartenders to make no discrimination among patrons on account of color, it would exonerate the owner from liability for a penalty under the Civil Rights Law. Nevertheless the case cited holds it to be unnecessary for plaintiff to produce evidence of authority to discriminate in order to establish a prima facie case. This seems to be upon the theory that a hotel proprietor is presumed to be master in his own house and that in deciding whether or not to serve individual customers with drinks bartenders are acting within the apparent scope of their authority from the owner, subject to the proviso that the owner may relieve himself of liability by going forward with proof that he had forbidden discrimination. (*Thomas* v. *Williams*, 48 Misc. 615; *Dickson* v.

---

* See annotation commencing at 139 American Law Reports 306 entitled: " Criminal responsibility of one authorized generally to sell intoxicating liquors for particular illegal sale thereof by employee or agent."

*Harris,* 95 N. Y. S. 1125; *Hart* v. *Hartford Lunch Co.,* 81 Misc. 237; *Westchester County* v. *Dressner,* 23 App. Div. 215, *supra.*

Plaintiffs are therefore incorrect in asserting in their moving papers that it will be necessary for them in order to establish a prima facie case to prove affirmatively that orders were given by the proprietor to the bartenders to discriminate against Negroes. Instead it will be incumbent upon the proprietor to prove that he issued orders not to do so.

Although the power to allow an examination before trial of an adverse party, even on matters relating to the adversary's case, is not dependent as matter of law upon the purpose or necessity of using his evidence to establish an affirmative claim or defense, and it is always discretionary with the court to permit such an examination (*Public National Bank* v. *National City Bank,* 261 N. Y. 316), the general rule for exercising discretion still is to refuse such examinations to a plaintiff in the absence of exceptional circumstances where they do not relate to affirmative proof which the plaintiff must produce to establish his alleged cause of action. (*Sands* v. *Comerford,* 211 App. Div. 406; *Tichnor Brothers, Inc.,* v. *Bickle,* 216 App. Div. 110; *Caskie* v. *International Railway Co.,* 230 App. Div. 591.)

Here the only object in plaintiffs procuring an examination before trial of the hotel owner would be to cross-examine him in advance with relation to the testimony which he will need to give in his own behalf, that he gave instructions not to engage in discrimination. It is not material or necessary to plaintiffs' prosecution of their actions that they shall cross-examine him upon this issue before the trial; they will have opportunity to do that satisfactorily when he takes the stand as part of his own case.

Plaintiffs are even less entitled to examine the bartenders and manager, Sam Imburgia. If their examinations were to be taken at all, it would not be as adverse parties but as witnesses. The manager, Sam Imburgia, is not a party to the actions. The bartenders, although parties, would nevertheless be examined before trial as witnesses inasmuch as they are not adversary parties with respect to the issue concerning which they would be interrogated. The manager cannot be examined as a managing agent of an adverse party under section 289 of the Civil Practice Act which applies only to corporations. The bartenders' liability to plaintiffs will depend upon whether they personally refused to serve plaintiffs at the bar on account of race. It is not part of plaintiffs' case against them to establish

that they were authorized so to act by the owner of the hotel. Plaintiffs desire to examine them as witnesses, not against themselves, but against the owner. Such persons are classified as witnesses although parties to the action. (*Nixon* v. *Beacon Transportation Corp.*, 239 App. Div. 830.) None of the occasions provided by section 288 of the Civil Practice Act for taking the depositions of witnesses have been shown. * Even where it is necessary for a plaintiff to produce affirmatively evidence of express authority between principal and agent, which is not true here, such a factor standing alone is not regarded as a special circumstance justifying the taking of the deposition of the agent as a witness. (*Lovasz* v. *Fowler*, 209 App. Div. 169; see *Tremblay* v. *Lyon*, 176 Misc. 906.)

It might be otherwise in some instances if the witness refuses to discuss the subject with plaintiff's attorney. No special circumstances of this nature are presented by the moving affidavits. For anything that appears to the contrary, bartenders and manager may be ready and willing to cast the onus upon the owner. Neither does it appear that they are still in the owner's employ, or that they have refused to divulge what knowledge or information they have concerning the subject. Even if the contrary were true, their testimony on this subject would not relate to anything which plaintiffs are required to prove in order to make out their cases prima facie.

The motion is denied, with $10 costs ($5 in each action) to abide the event.

---

* Where the person to be examined is about to depart from the State, or is without the State, or resides more than 100 miles from the place of trial, or is so sick or infirm as to afford reasonable grounds of belief that he will not be able to attend the trial, or other special circumstances render it proper that his deposition should be taken.— [REP.